UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

In re:                                          Chapter 13
ELI RANDALL,                                     Case No. 18-11706-CJF
         Debtor.

_____

NOTICE OF MOTION BY FEDERAL NATIONAL MORTGAGE ASSOCIATION
("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER
THE LAWS OF THE UNITED STATES OF AMERICA FOR RELIEF
FROM AUTOMATIC STAY, CO-DEBTOR STAY AND ABANDONMENT

_____

Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America has filed papers with the bankruptcy court to obtain relief from the automatic stay, co-debtor stay and abandonment.

**__Your rights may be affected.__ You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant relief from the automatic stay, co-debtor stay and/or abandonment, or if you want the court to consider your views on the motion then within 21 days of the filing date indicated on this notice, you or your attorney must file with the court a written response explaining your position and requesting a hearing at:

> Clerk, U.S. Bankruptcy Court
> Western District of Wisconsin
> 120 N. Henry Street, Rm 340
> Madison, WI 53703

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the deadline stated above.

You must also mail a copy to:

> O'Dess and Associates, S.C.
> Attn: D. Alexander Martin
> 1414 Underwood Avenue, Suite 403
> Wauwatosa, WI 53213

Mark Harring
Chapter 13 Standing Trustee
131 W. Wilson St., Ste. 1000
Madison, WI 5703-3260

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting the relief requested.

Dated at Wauwatosa, Wisconsin this <u>2nd</u> day of <u>October</u>, 20<u>18</u>.

O'DESS AND ASSOCIATES, S.C.
Attorneys for Fannie Mae

_____

By:    D. Alexander Martin
State Bar ID No. 1046591

Case No. 18-11706-cjf

**For informational purposes and to comply with applicable law only. This should not be construed as an attempt to collect a debt.**

**O'Dess and Associates, S.C., is attempting to collect a debt and any information obtained will be used for that purpose.**

**If you have previously received a Chapter 7 Discharge in Bankruptcy, this correspondence should not be construed as an attempt to collect a debt.**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────────────

In re:                                                    Chapter 13
ELI RANDALL,                                              Case No. 18-11706-CJF
          Debtor.

───────────────────────────────────────────────────────

MOTION BY FEDERAL NATIONAL MORTGAGE ASSOCIATION
("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER
THE LAWS OF THE UNITED STATES OF AMERICA FOR RELIEF
FROM AUTOMATIC STAY, CO-DEBTOR STAY AND ABANDONMENT

───────────────────────────────────────────────────────

Federal National Mortgage Association ("Fannie Mae"),[1] a corporation organized and

existing under the laws of the United States of America, through its attorneys, O'Dess and

Associates, S.C., pursuant to 11 U.S.C. §§362(d), 1301(c) and 554(b) of the Bankruptcy Code

and Rules 4001(a) and 6007(b) of the Federal Rules of Bankruptcy Procedure, moves the court

for relief from the automatic stay, co-debtor stay and abandonment, and in support states as

follows:

1.       Debtor Eli Randall filed a voluntary petition under chapter 13 of the Bankruptcy

Code on May 17, 2018.

2.       Debtor and co-debtor, Vickie S. Randall, executed and delivered a note dated

November 26, 2001, to Community First Bank for an original principal sum of $256,000.00

("Note").  A copy of the Note is attached as Exhibit 2.

3.       Payments pursuant to the Note are secured by a mortgage ("Mortgage") of even

───────────────

[1]Seterus, Inc. is the authorized sub-servicer for Fannie Mae providing loan servicing
pursuant to a limited power of attorney, a copy of which is attached as Exhibit 1.

date and duly assigned to Fannie Mae on real property located at 5858 W. Waveland Avenue,

Chicago, Illinois 60634 ("Property").  A copy of the Mortgage and Assignments of Mortgage are

attached as Exhibits 3 through 6, respectively.

4.      The amount of the claim as of the date of the filing of this case, according to

Seterus, Inc.'s records, is $342,748.55 as evidenced by Fannie Mae's Proof of Claim 1-1.

5.      Debtor failed to comply with the terms and conditions of the Note and

Mortgage and the order confirming his chapter 13 plan by failing to make the post-petition

monthly mortgage payments as they came due July 1, 2018, through October 1, 2018, at

$2,361.78, each; minus, suspense funds of $5.64, for a total of $9,441.48.  A copy of the post-

petition mortgage payment history is attached as Exhibit 7.

6.      Upon information and belief, the Property has an approximate value of

$350,000.00 based upon the debtor's schedules.

7.      Based upon *inter alia* the above, there is a lack of adequate protection as to the

secured interest involved herein, the Property is burdensome and of inconsequential value to the

bankruptcy estate, and cause exists to lift the automatic stay, co-debtor stay and make

inapplicable the 14 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

8.      Fannie Mae seeks relief for the purposes of exercising its remedies against the

Property permitted by the applicable note and mortgage and non-bankruptcy law, including

foreclosure proceedings in state court, and contacting the debtor and co-debtor by telephone or

written correspondence to, at Fannie Mae's option, offer, provide, and enter into a forbearance

agreement, loan modification, refinance agreement or other loan workout/loss mitigation

agreement.

9.   Fannie Mae has retained counsel to pursue this motion and anticipates incurring attorneys' fees and costs for which it may seek reimbursement.

WHEREFORE, Fannie Mae respectfully requests that this court enter an order:

A.   granting Movant relief from the automatic stay and co-debtor stay so that Fannie Mae, its successors and assigns and authorized servicers, may exercise its remedies against the Property permitted by the applicable note and mortgage and non-bankruptcy law, including foreclosure proceedings in state court, and authorizing Fannie Mae, its successors and assigns and authorized servicers, to contact the debtor and co-debtor by telephone or written correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement;

B.   granting abandonment of the bankruptcy estate's interest in the Property;

C.   declaring that the relief granted herein shall survive the conversion of this case from chapter 13 to any other chapter under the Bankruptcy Code;

D.   authorizing and directing the Chapter 13 Trustee not to make any further payments on Fannie Mae's claim 1-1; and,

E.   granting such other and further relief as the court deems just and appropriate.

Dated at Wauwatosa, Wisconsin this 2nd day of _____October_____, 20 18.

O'DESS AND ASSOCIATES, S.C.
Attorneys for Fannie Mae


_____

By:   D. Alexander Martin
      State Bar ID No. 1046591


Case No. 18-11706-cjf

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:                                          Chapter 13
ELI RANDALL,                                     Case No. 18-11706-CJF
      Debtor.

---

CERTIFICATE OF SERVICE

---

     The undersigned certifies that on 2nd day of ____October____, 20 18, he caused a copy

of this Notice of Motion and Motion for Relief from Automatic Stay and Abandonment and

proposed order to be served by U.S. mail on debtor, Eli Randall, and co-debtor, Vickie S.

Randall, at 5858 W. Waveland Avenue, Chicago, Illinois 60634, and on the identified creditors

in the attached matrix; and, on the same date by electronic means *via* CM/ECF on the debtor's

counsel, Wade M. Pittman, and on the chapter 13 trustee, Mark Harring, and the office of the

United States Trustee.

     Dated at Wauwatosa, Wisconsin this 2nd day of ____October____, 20 18.


                               _____

                               D. Alexander Martin

**Creditor Mailing Matrix (Case No. 18-11706-cjf)**

```
Label Matrix for local noticing        Federal National Mortgage Association      IRS - Centralized Insolvency Operations
0758-3                                  c/o O'Dess and Associates, S.C.            P.O. Box 7346
Case 3-18-11706-cjf                     1414 Underwood Ave., Ste. 403              Philadelphia, PA 19101-7346
Western District of Wisconsin, http://www.wiw  Wauwatosa, WI 53213-2653
Madison
Fri Sep 14 13:21:01 CDT 2018


Secretary of Treasury                   Securities and Exchange Commission        U.S. Trustee's Office
Treasury Department                     175 West Jackson Boulevard                780 Regent Street, Suite 304    *
1500 Pennsylvania Avenue N.W.           Suite 900                                 Madison, WI 53715-2635
Washington, DC 20220-0001               Chicago, IL 60604-2908


Wisconsin Department of Revenue         U.S. Bankruptcy Court                     Fannie Mae
Special Procedures Unit                 U.S. Federal Courthouse        *          c/o Seterus, Inc.                *
P.O. Box 8901                           120 N. Henry Street                       PO Box 1047
Madison, WI 53708-8901                  Madison, WI 53703-2559                    Hartford, CT 06143-1047


Mark & Linda Weldy                      Mark Weldy                                Seterus
8130 9th Street Place North             8130 9th Street Place North               P.O. Box 1077                    *
Oakdale, WI 55128-5391                  Oakdale MN 55128-5391                     Hartford, CT 06143-1077


Wisconsin Department of Revenue         Eli Randall                               Mark Harring                     *
Special Procedures Unit  Bankruptcy     5858 W. Waveland Ave                      131 W. Wilson Street, Suite 1000
P.O. Box 8901   MS 4-SPU                Chicago, IL 60634-2663                    Madison, WI 53703-3260
Madison, WI  53708-8901


Vickie Sue Randall                      Wade M. Pittman                           End of Label Matrix
5858 W. Waveland Ave.                   Pittman & Pittman Law Offices, LLC  *     Mailable recipients    16
Chicago, IL 60634-2663                  222 N Midvale Blvd, STE 16                Bypassed recipients     0
                                        Madison, WI 53705-5004                    Total                  16
```

Notice and Motion will not be served by US Mail on the
entities marked with asterisk above.

EXHIBIT 1

Washington County, Oregon       2011-076340
10/31/2011 02:15:56 PM
D-PA           Cnt=1 Stn=2 S AKINS
$10.00 $5.00 $11.00 $15.00 - Total = $41.00

01644476201100763400020022

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and regarded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

Record and Return to:
Seterus, Inc.
Title Services Department
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

## LIMITED POWER OF ATTORNEY

### FROM: Federal National Mortgage Association

### TO: SETERUS, INC

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc. 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-in-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1.  the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2.  the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3.  the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4.  the modification or extension of a mortgage or deed of trust;

5.  the subordination of the lien of a mortgage or deed of trust;

6.  the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

    a.  the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
    b.  the issuance of a statement of breach or nonperformance;
    c.  the issuance or cancellation or rescission of notices of default;
    d.  the cancellation or rescission of notices of sale; and
    e.  the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Fannie Mae to the Attorney-in-Fact under this Limited Power of Attorney;

7.  the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8   the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage Insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of September, 2011.

Federal National Mortgage Association

By: _____
      Barbara Cushman
      Asst. Vice President

By _____
      Shanicka Singleton
      Assistant Secretary

STATE OF VIRGINIA        }
COUNTY OF FAIRFAX        }

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of September, 2011 by Barbara Cushman, Assistant Vice President, and Shanicka Singleton, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

_____
Notary Public: Francisco Nicco-Annan
My Commission Expires: 02/28/2015

Francisco Nicco-Annan
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7187255
My Commission Expires 2/28/2015



I, *Richard W. Hobernicht*, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, do hereby certify this to be a true and correct copy of the original.

Date: November 01, 2011

By: _____, Deputy

EXHIBIT 2

INVESTOR LOAN #

ORIGINAL NOTE

NOVEMBER 26, 2001                                    Boscobel                    , Wisconsin
[Date]                                                    [City]

5858 W. Waveland Ave. Chicago IL 60634
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 256,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Community First Bank . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JANUARY, 2002 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on DECEMBER 1, 2031 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 925 Wisconsin Ave POB 307, Boscobel, WI 53805 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ *****1,597.11*****.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



WISCONSIN FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3250  1/01  (page 1 of 3 pages)

FIPCO                                    Distributed by FIPCO - (800)722-3498                        REV. 11/09/2000

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**



(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _5.00_ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.    **UNIFORM SECURED NOTE.**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

WISCONSIN FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3250  1/01  (page 2 of 3 pages)

FIPCO    Distributed by FIPCO - (800)722-3498    REV. 11/09/2000

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Eli D. Randall                  - Borrower       Vickie S. Randall                - Borrower

_____ (Seal)          _____ (Seal)
                                - Borrower                                        - Borrower

*[Sign Original Only]*

Payable without recourse to HomeSide Lending, Inc.

COMMUNITY FIRST BANK

BY _____
Bradley A. Bodenbender
Loan Officer

PAY TO THE ORDER OF

WITHOUT RECOURSE
HOMESIDE LENDING, INC.

_____

BRENDA F. BRENDLE
SENIOR VICE PRESIDENT

WISCONSIN FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3250  1/01  *(page 3 of 3 pages)*

FIPCO                                        Distributed by FIPCO - (800) 722-3498                                        REV. 11/08/2000

# EXHIBIT 3

0020473563
3366/0122 18 001 Page 1 of    15
2002-04-25   09:50:55
Cook County Recorder          49.00

After Recording Return To:
Community First Bank
PO Box 307
Boscobel, WI 53805

ORIGINAL

Prepared by:

Pat Updike
for COMMUNITY FIRST BANK
925 WISCONSIN AVE, P.O. BOX 307
BOSCOBEL, WI 53805

CHICAGO TITLE & TRUST COMPANY

This is to certify that this is a true
and correct copy of the original recorded
document.

[Space Above This Line For Recording Data]

# MORTGAGE

**DOCUMENT NUMBER**

**PARCEL IDENTIFICATION NO.**
13-20-221-035-0000

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated __NOVEMBER 26, 2001__, together with all Riders to this document.

(B) "Borrower" is _Eli D. Randall and Vickie S. Randall, husband and wife_.

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is _Community First Bank_.

Lender is a _Wisconsin banking corporation_ organized and existing under the laws of _the State of Wisconsin_. Lender's address is _925 Wisconsin Ave POB 307, Boscobel, WI 53805_.

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated _NOVEMBER 26, 2001_. The Note states that Borrower owes Lender _TWO HUNDRED FIFTY-SIX THOUSAND AND NO/100_ Dollars (U.S. $ _256,000.00_) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _DECEMBER 1, 2031_.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The

☐  Adjustable Rate Rider        ☐  Condominium Rider              ☐  Second Home Rider
☐  Balloon Rider                ☐  Planned Unit Development Rider  ☐  Other(s) [specify] _____
☐  1-4 Family Rider             ☐  Biweekly Payment Rider

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3014   1/01 (page 1 of 16 pages)

FIPCO

Distributed by FIPCO - (800)722-3498                REV. 11/09/2000

BOX 333-CTI

mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the _____County_____ of

[Type of Recording Jurisdiction]

Cook

[Name of Recording Jurisdiction]

Lot 74 (except the East 60 feet thereof) in Koester & Zander's Addition to West Irving Park, a Subdivision of the South 1/2 of the Northeast 1/4 of Section 20, Township 40 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois.

P. I.N: 13.20. 221.035

which currently has the address of 5858 W. Waveland Ave.

[Street]

Chicago , Illinois 60634 ("Property Address"):

[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

ILLINOIS—Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014  1/01 (page 3 of 16 pages)

 FIPCO

Distributed by FIPCO - (800)722-34    REV. 11/09/2000

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

ILLINOIS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014   1/01  *(page 4 of 16 pages)*

REV. 11/09/2000

FIPCO    by FIPCO · (800)722-3498

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other Items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014   1/01  (page 5 of 16 pages)



Distributed by FIPCO · (800)722-3498                     REV. 11/09/2000

shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.     Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.     Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014  1/01  (page 6 of 16 pages)

REV. 11/08/2000

FIPCO

Distributed by FIPCO · (800)722-3498

might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



Form 3014   1/01 (page 7 of 16 pages)

 FIPCO

Distributed by FIPCO - (800)722-3498                    REV. 11/09/2000

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014 1/01 *(page 8 of 16 pages)*

REV. 11/08/2000

FIPCO
buted by FIPCO - (800)722-3498

Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of fund that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).



As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Distributed by FIPCO - (800)722-3498

Form 3014   1/01   (page 10 of 16 pages)
REV. 11/09/2000

FIPCO

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall



obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014   1/01  *(page 12 of 18 pages)*

REV. 11/09/2000

FIPCO

Distributed by FIPCO · (800)722-3498

Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

ILLINOIS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                         Form 3014   1/01  (page 13 of 18 pages)



20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

ILLINOIS—Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014   1/01  (page 14 of 16 pages)

Distributed by FIPCO · (800)722-3498

REV. 11/09/2000

FIPCO

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3014   1/01  (page 15 of 16 pages)

FIPCO

Distributed by FIPCO - (800) 722-

REV. 11/08/2000

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Eli D. Randall        -Borrower

_____ (Seal)
Patricia Updike

_____ (Seal)
Vickie S. Randall      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
Jane Hackett

_____ (Seal)
                      -Borrower'

·········································· [Space Below This Line For Acknowledgment] ··········································

STATE OF WISCONSIN,              GRANT          County ss:
The foregoing instrument was acknowledged before me this 26TH day of NOVEMBER, 2001

by Eli D. Randall and Vickie S. Randall

My Commission Expires: July 31, 2005      _____
                                          Notary Public, State of WISCONSIN
                                          Bradley A. Bodenbender

ILLINOIS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01 (page 16 of 16 pages)

FIPCO          Distributed by FIPCO - (800)722-3498          REV. 11/08/2000

# EXHIBIT 4

0020473564

3366/0123 18 001 Page 1 of 1
2002-04-25 09:51:08
Cook County Recorder 23.00

THIS INSTRUMENT WAS PREPARED
BY and AFTER RECORDING RETURN
TO: Pat Updike for Comm. 1st
Bank
Community First Bank
PO Box 307
Boscobel, WI 53805

W. B. A. 425.1L (6/99) F41113 EFIPCO
©Wisconsin Bankers Association 1999

13-20-221-035-0000
Parcel Identification No.

DOCUMENT NO.

## ASSIGNMENT OF MORTGAGE - BY LENDER

The undersigned Lender, for valuable consideration, receipt of which is acknowledged, assigns to HomeSide
Lending, Inc.
_____, a Mortgage executed by Eli D. Randall and Vickie S. Randall

to Lender and recorded in the Recorder's Office of Cook _____ County, Illinois, in
_____, as Document No. 20473563 (Book, Page, Etc.)
encumbering the real estate described below together with a note or loan agreement from Borrower to Lender
dated NOVEMBER 26, 2001 .
Lot 74 (except the East 60 feet thereof) in Koester & Zander's Addition to
West Irving Park, a Subdivision of the South 1/2 of the Northeast 1/4 of
Section 20, Township 40 North, Range 13, East of the Third Principal
Meridian, in Cook County, Illinois.

[X] If checked, this assignment is without recourse to Lender.
[ ] If checked here, real estate description continues or appears on attached sheet.

STATE OF ILLINOIS WISCONSIN

County of Cook Grant

This instrument was acknowledged before me

on NOVEMBER 26, 2001
by Daniel R. Klahn
and Bradley A. Bodenbender
(Names of person(s))

Vice President
as and Loan Officer
(Type of authority)

of Community First Bank
(Name of party on behalf of whom instrument was executed)

* Patricia Updike
Notary Public, Illinois

My Commission (Expires) (Is) November 2, 2003

Dated NOVEMBER 26, 2001

Community First Bank
NAME OF LENDER

By _____

Title Vice President

* Daniel R. Klahn

Attest _____

Title Loan Officer

* Bradley A. Bodenbender

*Type or print name signed above.

BOX 333-CTI



**Washington Mutual**
Legal Department
Mailstop: WMT 1706
1201 Third Avenue
Seattle, WA 98101

(206) 377-8100 direct phone
(206) 377-6244 fax
meryl.seely@wamu.net

January 28, 2003

Ms. Susie Houser
Homeside Lending,
   a Division of Washington Mutual Bank, F.A.
7301 Baymeadows Way
Jacksonville, Fl. 32256

Dear Susie:

    Following up with hour discussion last week regarding the Certificate of Secretary addressing the liquidation of HomeSide Lending, Inc. into Washington Mutual Bank, F.A., I'm enclosing a copy of the Certificate recorded in Berks County, PA. Let me know if you need anything else regarding this matter.

                    Sincerely,

                    Meryl Seely
                    Paralegal

Enclosures

DOCSSEA 65057:1

JAN.24'2003 02:57     CSC     #4824 P.002/004

RECORDER DF DEEDS
BERKS COUNTY
READING, PA. 19601
ELLIE ANTOINE

COPY

DEED \$\$   3768
REG 01-17-03 15:21
1, Y DONNA   0001 87913
savings asso RECORDS MGMT   \$5.00
certify that t FEE   \$55.00
WRIT   \$0.50
CHECK #   11870
Del CHECK #   7900972
Del ST   \$60.50
des CHK   \$50.00
Leg CHK   \$10.50
foll CG   \$0.00

INGTON MUTUAL BANK, FA
TIFICATE OF SECRETARY

of Washington Mutual Bank, FA (the "Association"), a federal
l existing under the laws of the United States of America, hereby
rue and correct:

on was the sole shareholder of SR Investment, Inc., a
estment"), prior to the conversion of SR Investment into a
pany, of which the Association was the sole member, as
. SR Investment was the sole shareholder of HomeSide
ation ("HomeSide"), prior to the merger described in the

2.     HomeSide was merged with and into SR Investment on November 15, 2002. SR Investment was the surviving entity in the merger. A true, correct and complete copy of the Certificate of Merger as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit A and a true, correct and complete copy of the Articles of Merger, as filed with the Secretary of State of the State of Florida on November 15, 2002 is attached hereto as Exhibit B. As a result of the merger, SR Investment became the successor in interest to HomeSide by operation of law.

3.     Following the merger referred to in paragraph 2 above, SR Investment was converted from a Delaware corporation into a Delaware limited liability company, HomeSide Delaware LLC (the "LLC"), of which the Association was the sole member, on November 15, 2002. A true, correct and complete copy of the Certificate of Formation for the LLC as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit C and a true, correct and complete copy of the Certificate of Conversion converting SR Investment into the LLC as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit D. As a result of the conversion, the LLC became the successor in interest to SR Investment by operation of law.

4.     Following the conversion of SR Investment into the LLC, the LLC was merged into a Delaware common law trust (the "Trust"), of which the Association was the sole beneficiary and co-trustee and Wilmington Trust Company was the sole administrative trustee (the "Administrative Trustee"). A true, correct and complete copy of the Certificate of Merger merging the LLC into the Trust as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit E. As a result of the merger, the Trust became the successor in interest to the LLC by operation of law.

5.     After the LLC was merged into the Trust, the Administrative Trustee resigned pursuant to the Notice of Resignation dated November 15, 2002 and effective at 9:00 a.m. EST on November 16, 2002 (the "Resignation"). A true, correct and complete copy of the Resignation is attached hereto as Exhibit F. Upon the effectiveness of the Resignation, there was no distinction between the beneficiary and the sole remaining trustee of the Trust and therefore the Association, as sole beneficiary and sole trustee, became the successor in interest to the Trust by operation of law.

DOCSSBA/62096.1

JAN.24'2003 02:57                    CSC                    #4824 P.003/004

WASHINGTON MUTUAL BANK, FA   COPY
CERTIFICATE OF SECRETARY

I, William L. Lynch, Secretary of Washington Mutual Bank, FA (the "Association"), a federal savings association duly authorized and existing under the laws of the United States of America, hereby certify that the following statements are true and correct:

    1.    The Association was the sole shareholder of SR Investment, Inc., a Delaware corporation ("SR Investment"), prior to the conversion of SR Investment into a Delaware limited liability company, of which the Association was the sole member, as described in paragraph 3 below. SR Investment was the sole shareholder of HomeSide Lending, Inc., a Florida corporation ("HomeSide"), prior to the merger described in the following paragraph.

    2.    HomeSide was merged with and into SR Investment on November 15, 2002. SR Investment was the surviving entity in the merger. A true, correct and complete copy of the Certificate of Merger as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit A and a true, correct and complete copy of the Articles of Merger as filed with the Secretary of State of the State of Florida on November 15, 2002 is attached hereto as Exhibit B. As a result of the merger, SR Investment became the successor in interest to HomeSide by operation of law.

    3.    Following the merger referred to in paragraph 2 above, SR Investment was converted from a Delaware corporation into a Delaware limited liability company, HomeSide Delaware LLC (the "LLC"), of which the Association was the sole member, on November 15, 2002. A true, correct and complete copy of the Certificate of Formation for the LLC as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit C and a true, correct and complete copy of the Certificate of Conversion converting SR Investment into the LLC as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit D. As a result of the conversion, the LLC became the successor in interest to SR Investment by operation of law.

    4.    Following the conversion of SR Investment into the LLC, the LLC was merged into a Delaware common law trust (the "Trust"), of which the Association was the sole beneficiary and co-trustee and Wilmington Trust Company was the sole administrative trustee (the "Administrative Trustee"). A true, correct and complete copy of the Certificate of Merger merging the LLC into the Trust as filed with the Secretary of State of the State of Delaware on November 15, 2002 is attached hereto as Exhibit E. As a result of the merger, the Trust became the successor in interest to the LLC by operation of law.

    5.    After the LLC was merged into the Trust, the Administrative Trustee resigned pursuant to the Notice of Resignation dated November 15, 2002 and effective at 9:00 a.m. EST on November 16, 2002 (the "Resignation"). A true, correct and complete copy of the Resignation is attached hereto as Exhibit F. Upon the effectiveness of the Resignation, there was no distinction between the beneficiary and the sole remaining trustee, of the Trust and therefore the Association, as sole beneficiary and sole trustee, became the successor in interest to the Trust by operation of law.

DOCSSSA/87096.1

As a result of the transactions described above, the Association is the successor in interest to HomeSide, SR Investment, the LLC and the Trust by operation of law.

IN WITNESS WHEREOF, I have hereunto subscribed my name this 15th day of January, 2003.

_____
William L. Lynch, Secretary

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that William L. Lynch is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledge it as the Secretary of Washington Mutual Bank, FA to be the free and voluntary act of such party for the uses and purposes mentioned therein.

Dated this 15th day of January, 2003.

```
╔═══════════════════════════════╗
║      Notary Public            ║
║   State of Washington         ║
║    CHRISELDA LANDON           ║
║ My Appointment Expires Feb 26, 2007 ║
╚═══════════════════════════════╝
```

_____
Notary Public in and for the State of
Washington, residing at Seattle
My commission expires: 2-26-07

# EXHIBIT 5

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #:

Doc#. 1403808080 fee: $50.00
Date: 02/07/2014 09:58 AM Pg:  1 of 2
Cook County Recorder of Deeds
*RHSP:$9.00 RPRF:$1.00 FEES Applied

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, SUCCESSOR BY MERGER TO HOMESIDE LENDING, INC., WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 11/26/2001, and made by ELI D. RANDALL AND VICKIE S. RANDALL to COMMUNITY FIRST BANK and recorded 04/25/2002 in the records of the Recorder or Registrar of Titles of COOK County, Illinois, in Book n/a, Page n/a, as Instrument # 0020473563. Upon the property situated in said State and County as more fully described in said Mortgage or herein to wit:

LOT 74 (EXCEPT THE EAST 60 FEET THEREOF) IN KOESTER & ZANDER'S ADDITION TO WEST IRVING PARK, A SUBDIVISION OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 20, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax Code/PIN: 13-20-221-035-0000

Property is commonly known as: 5858 W. WAVELAND AVE., CHICAGO, IL 60634.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

Dated on  02n 04 2014 (MM/DD/YYYY)
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, SUCCESSOR BY MERGER TO HOMESIDE LENDING, INC., by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact

By:
Teshonda Anderson
Teshonda Anderson
Vice President

Loan #:

STATE OF LOUISIANA    PARISH OF OUACHITA
On _02/04/2014_ (MM/DD/YYYY), before me appeared _LeShonda Anderson_, to me personally known, who did say that he/she/they is/are the _Vice President_ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, SUCCESSOR BY MERGER TO HOMESIDE LENDING, INC. and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 60422

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

# EXHIBIT 6

We certify that this is a true and
correct copy of the original hereof.
PEIRSONPATTERSON, LLP

*Lori Stacy*

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

This instrument was prepared by:
PEIRSONPATTERSON, LLP
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Permanent Index Number: 13-20-221-035-0000

————————————————————*[Space Above This Line For Recording Data]*————————

Loan No.:
FNMA Loan No.:

# ILLINOIS ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association,** the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS,** (herein "Assignee"), whose address is 14221 Dallas Parkway, Suite 100, Dallas, TX 75254, a certain Mortgage dated November 26, 2001 and recorded on April 25, 2002, made and executed by **ELI D. RANDALL AND VICKIE S. RANDALL** to and in favor of **COMMUNITY FIRST BANK,** upon the following described property situated in **COOK** County, State of Illinois:
Property Address: **5858 W. WAVELAND AVE, CHICAGO, IL 60634**

**LOT 74 (EXCEPT THE EAST 60 FEET THEREOF) IN KOESTER & ZANDER'S ADDITION TO WEST IRVING PARK, A SUBDIVISION OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 20, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

such Mortgage having been given to secure payment of  Two Hundred Fifty Six Thousand  and 00/100ths ($256,000.00), which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 0020473563), in the Recorder's Office of COOK County, State of Illinois.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
9/12/14

Assignor:
JPMorgan Chase Bank, National Association

By: _____
    John Bidol
    VICE PRESIDENT

Its: _____

## ACKNOWLEDGMENT

State of Louisiana            §
                             §
Parish of Ouachita           §

On this _12th_ day of _September 2014_, before me appeared _John Bidol_, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the _VICE PRESIDENT_, of JPMorgan Chase Bank, National Association, and that the seal affixed to said instrument is the corporate seal of said national association and that the instrument was signed and sealed on behalf of the national association by authority of its board of directors and that _John Bidol_ acknowledged the instrument to be the free act and deed of the national association.

_____

Y.K. Wilson
Notary Public #064399
Ouachita Parish, LA
Lifetime Commission

Signature of Person Taking Acknowledgment
Y. K. Wilson

Printed Name
NOTARY PUBLIC (LIFETIME)

Title or Rank

(Seal)

Serial Number, if any: N/A

---

Illinois Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876            Page 2 of 2            L73108IL 01/12 Rev. 02/14

# EXHIBIT 7

## POST-PETITION PAYMENT HISTORY

| Name | Eli Randall | Todays Date | | 10/1/2018 |
|------|-------------|-------------|---|-----------|
| Loan | ███████ | | | |
| Case | 18-11706 | BK Specialist | | Dennis Breiner |
| Filing Date | 5/17/2018 | BK QA Check Specialist | | Name |
| Modification | | Property Address | | |
| Agreed Order | | 5858 W WAVELAND AVE CHICAGO IL 60634-2663 | | |

| Date Received | Amount Received | $ Applied To Payment | Applied to Month | Paid To Suspense | Running Suspense Total | Post Petition Payment Amount Due | Court Filed PCN Date |
|---------------|-----------------|----------------------|------------------|------------------|------------------------|----------------------------------|----------------------|
| | | | | | | | |
| 6/19/2018 | $2,367.42 | $2,361.78 | Jun-18 | $ 5.64 | $ 5.64 | $2,361.78 | PCN |
| | | | Jul-18 | $ - | $ 5.64 | $2,361.78 | Next Due |
| | | | Aug-18 | $ - | $ 5.64 | $2,361.78 | |
| | | | Sep-18 | $ - | $ 5.64 | $2,361.78 | |
| | | | Oct-18 | $ - | $ 5.64 | $2,361.78 | |
| | | | | | | | |
| | | | | Total Installments | | $9,447.12 | |
| | | | | Suspense | | $ 5.64 | |
| | | | | Total Post Arrears | | $ 9,441.48 | |
| | | | | | | | |
| | | | | | | | |